**Ex parte William Harvey BOWERS.**

**No. 07–84–0011–CV.**

. Court of Appeals of Texas, Amarillo.

April 26, 1984.

Larry G. Alexander, Sherman, for relator.

Thomas E. Tollett, Littlefield, for respondent.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is an original habeas corpus proceeding. Relator William Harvey Bowers was ordered to jail by the district court of Lamb County for failing to pay child support. He immediately sought a writ of habeas corpus from this Court and was released on bond pending our resolution of his contention that the contempt judgment is void. Tex.R.Civ.Pro. 383a. Having concluded that the contempt judgment is not void, we deny the writ and remand Relator to the custody of the sheriff of Lamb County.

This case originated in the district court in Grayson County and that court was the first court of continuing jurisdiction. It later transferred the case to the district court in Lamb County and the only issue before us is whether the order transferring the case to Lamb County is void.[1] The following facts are pertinent to our resolution of that question.

Relator and Katie Bowers were divorced on February 19, 1981, in the 59th Judicial District Court of Grayson County, by a decree that ordered Relator to pay $300.00

per month as support for his two minor children. On June 23, 1983, Katie filed a motion for contempt, in the same court, alleging that Relator had not obeyed the child support order.

Relator was duly served and ordered to appear on August 16, 1983, to show cause why he should not be held in contempt. However, on August 1, 1983, Katie filed a motion to transfer the case from the district court of Grayson County, the court of continuing jurisdiction under § 11.05 of the Family Code,[2] to the district court of Lamb County, the alleged principal residence of the children. On August 4, 1983, the motion was granted and the case was transferred to the court in Lamb County. The record does not indicate that the motion to transfer was served on Relator or that the court conducted a hearing on the motion.

On October 21, 1983, the district court in Lamb County issued an order directing Relator to appear on November 23, 1983, to show cause why he should not be punished for contempt. Relator was served with the order and a copy of Katie's motion for contempt on October 28, 1983. On the day of the hearing his attorney secured a continuance until December 1, 1983. On that date, Katie appeared but Relator did not. The Lamb County district court then issued a writ of attachment for Relator.

Pursuant to the writ from Lamb County, Relator was attached by the sheriff of Grayson County on December 23, 1983, but was released on bond the next day by the district court in Grayson County. The district court in Lamb County then advised Relator's counsel that the contempt matter would be heard on January 4, 1984. Again, Katie appeared on that date but Relator did

---

**1.** Relator poses the question in this manner: "The sole and dispositive issue in this case is whether a transferee court acquires subject matter jurisdiction over a motion for contempt in a suit affecting the parent-child relationship when the suit is transferred from the district court having continuing jurisdiction without notice and hearing of the motion to transfer to the respondent."

**2.** Tex.Fam.Code Ann. § 11.05 (Vernon 1975) *as amended by* 1975 Tex.Gen.Laws, ch. 476, §§ 4–6, at 1254; 1979 Tex.Gen.Laws, ch. 584, § 1, at 1201, ch. 643, § 2, at 1471, ch. 763, §§ 1, 2, at 1888.

not. The court then heard evidence and granted Katie judgment for the delinquent support plus costs, including attorney's fees, but reserved a decision on the contempt issue until Relator could be brought before the court. It then issued another writ of attachment for Relator.

On January 16, 1984, Relator and his counsel, and Katie and her counsel, appeared before the trial court for a hearing on the contempt motion, Relator appearing pursuant to the writ of attachment. After hearing evidence, the court found Relator in contempt and ordered him to jail for one hour and thereafter until he paid the delinquent support and costs. On the same day, Relator filed a motion for new trial, seeking to set aside the judgment for delinquent child support rendered on January 4, 1984.

■ Because this proceeding is a collateral attack upon the contempt judgment of January 16, 1984, Relator must convince this Court that the contempt judgment is void. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980); *Ex parte Cummings*, 610 S.W.2d 238, 240 (Tex.Civ.App.—Amarillo 1980, no writ). Relator acknowledges his burden and contends the judgment is void because the Lamb County district court never acquired subject matter jurisdiction of the case.[3] He predicates his contention on the argument that the transfer order from the court in Grayson County was rendered in violation of the statutes specifying the procedure for transfer. Because

of that defect, says Relator, the transfer order was void and could not effectively transfer dominant jurisdiction to the district court in Lamb County. In order to resolve Relator's contention, we will assume his premise, *i.e.*, that a void transfer order would not activate the subject matter jurisdiction of the transferee court, thus voiding a subsequent contempt judgment. *See Waldron v. Waldron*, 614 S.W.2d 648, 650 (Tex.Civ.App.—Amarillo 1981, no writ).

■ When a court acquires jurisdiction of a suit affecting the parent-child relationship, it retains continuing, exclusive jurisdiction of all parties and matters provided for under subtitle A of Title 2 of the Family Code. Thereafter, no other Texas court has jurisdiction of a suit affecting the parent-child relationship "except on transfer as provided in section 11.06 or 17.06 of this code." Section 11.05, Tex.Fam.Code Ann. (Vernon 1975) (as amended 1975, 1979). Under § 11.06(b),[4] a petitioner seeking to enforce a decree may request a transfer from the court of continuing jurisdiction to a court where venue is proper by filing a timely motion. The petitioner's motion is timely, under § 11.06(f), if made "at the time the initial pleadings are filed." Additionally, although the statutes in question do not specify the manner in which other interested parties are to be given notice of the motion to transfer, it is apparent that notice is contemplated, because subsections (f), (g) and (h) of § 11.06 outline the responses available to a party who wants to oppose the transfer.[5] *See* discussion in 2

---

3. He does not deny that the district court in Lamb County gave him sufficient notice and opportunity to prepare and present any defenses to the show-cause order that he may have had. *See, e.g., Ex parte Garza*, 593 S.W.2d 114, 117–18 (Tex.Civ.App.—Amarillo 1979, no writ); *Ex parte Lee*, 568 S.W.2d 689, 691–92 (Tex.Civ.App. —Houston [1st Dist.] 1978, no writ). In his arguments to this Court, Relator intimates that the Grayson court's transfer order violated due process. If that is his claim, he may not assert it here as a basis for a writ. At no point in these proceedings has Relator claimed he had a defense to the trial court's finding of delinquency, other than in the defects in the motion to transfer. The record affirmatively shows a lack of

diligence in calling the trial court's attention to any irregularities in the transfer. These deficiencies preclude a due-process attack on the transfer as a basis for a writ of habeas corpus. *Ex parte Hodge*, 611 S.W.2d 468, 469–70 & n. 1 (Tex.Civ.App.—Dallas 1980, no writ).

4. Tex.Fam.Code Ann. § 11.06 (Vernon Supp. 1984).

5. Citation and notice generally are governed by § 11.09, Tex.Fam.Code Ann. (Vernon Supp. 1984).

L.M. SIMPKINS, *TEXAS FAMILY LAW* § 13.10 (Speer's 5th ed. 1981 & Supp.1984).

■ It is apparent that the foregoing procedures were not followed in this case. The motion to transfer was not timely, having been filed after the motion for contempt was filed. Additionally, Relator was not given notice of the motion to transfer and had no opportunity to respond to it. Thus, the procedure followed by the district court in Grayson County was unquestionably erroneous.

It does not follow, however, that the order of transfer was void. That conclusion, and that order's resultant vulnerability to collateral attack is resolved by determining whether the court in Grayson County had the jurisdictional power to issue the order.

■ A court's jurisdiction contains two elements: (1) jurisdiction of the subject matter and (2) jurisdiction of the person. The first element is established by operation of law through the constitutional and statutory provisions that enumerate the kinds of cases the court can entertain. *Federal Underwriters Exchange v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943). The second element is established either by a litigant's voluntary entry into the court or by the serving of process on the litigant in accordance with state procedures consistent with due process. *Colson v. Thunderbird Bldg. Materials*, 589 S.W.2d 836, 839–840 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). If one of the elements is missing, any judgment or order rendered by the court is void. *Austin Independent School District v. Sierra Club*, 495 S.W.2d 878, 881 (Tex.1973). Conversely, as stated many years ago in *Clayton v. Hurt*, 88 Tex. 595, 32 S.W. 876 (1895):

Where a court of general jurisdiction, in the exercise of its ordinary judicial functions, renders a judgment in a cause in which it has jurisdiction over the person of the defendant and the subject-matter of the controversy, such judgment is never void, no matter how erroneous it may appear, from the face of the record or otherwise, to be.

*Accord Ex parte Johnson*, 654 S.W.2d 415, 419 (Tex.1983); *French v. Brown*, 424 S.W.2d 893, 894 (Tex.1967).

■ In this case, the court in Grayson County had jurisdiction of the subject matter under the general laws, Tex.Const. art. V § 8; Tex.Rev.Civ.Stat.Ann. art. 1906 (Vernon 1964), to the exclusion of all other courts under the specific provisions of the Family Code by which it was the court of continuing jurisdiction. Section 11.05, Tex. Fam.Code Ann. (Vernon 1975) (amended 1975, 1979).[6] It acquired jurisdiction over the person of the Relator when he was served with a copy of the motion for contempt. Thus, at the time the court issued the transfer order, which was within its power under § 11.06, its jurisdiction was fully activated, *Waldron v. Waldron*, 614 S.W.2d 648, 650 (Tex.Civ.App.—Amarillo 1981, no writ), and its order, even though erroneous, cannot be void. *Ex parte Johnson, supra; French v. Brown, supra; Clayton v. Hurt, supra.*

Relator's argument to the contrary has been rejected in analogous cases. *French v. Harris*, 658 S.W.2d 690, 691 (Tex.App.— Dallas 1983, no writ) held that the denial of a hearing to a husband who had controverted a motion to transfer was erroneous, but the transfer order was not void. More pertinent, in *French v. Brown, supra*, the defendant had been served with the pleading that initiated the controversy, but was not served with the plaintiff's motion for summary judgment. After summary judgment was granted, the defendant attacked the judgment by bill of review. Adopting

6. We do not decide whether the Legislature has elevated the law of dominant jurisdiction, which is codified in this section, to the status of subject matter jurisdiction. *See Trader v. Dear*, 565 S.W.2d 233, 235–37 (Tex.1978); *State v. Dugar*, 553 S.W.2d 102, 105 (Tex.1977); *Curtis v. Gibbs*, 511 S.W.2d 263, 266–67 (Tex.1974).

the statement from *Clayton v. Hurt* quoted above, the Supreme Court pointed out that the procedural failure to serve the motion for summary judgment may have resulted in an erroneous judgment but it did not terminate the trial court's jurisdiction and make the judgment void. The court noted that a judgment is not void, even though it may be erroneous, if the court had jurisdiction of the subject matter and parties and the power to render the particular judgment. *Id.* at 895. Consistent with that view, the Supreme Court held in *Ex parte Johnson, supra,* that an erroneous order was voidable, not void, if issued by a court having jurisdiction of the parties and subject matter and power to issue the order.

When those principles are applied here, we must conclude that the transfer order, even though erroneous, was effective to transfer this case to Lamb County and the contempt judgment rendered by that court is not subject to collateral attack by a habeas corpus proceeding.

We realize that the prohibition against interlocutory appeal of a transfer order, Tex.Fam.Code Ann. § 11.06(i) (Vernon Supp.1984); *Brown v. Brown,* 566 S.W.2d 378, 380 (Tex.Civ.App.—Corpus Christi 1978, no writ), limits the avenues of relief available when a case is erroneously transferred. However, if the injured party is aware of the transfer order before it becomes final under Rule 329(d), Tex.R.Civ. Pro., he can petition the court that ordered the transfer to vacate its order or, failing that, seek a writ of mandamus in the appropriate appellate court. *Seay v. Valderas,* 643 S.W.2d 395, 397 (Tex.1982); *French v. Harris,* 658 S.W.2d at 691–92. If that remedy is unavailable, he can file a plea in abatement in the transferee court, *see Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex. 1974), and, if that is unsuccessful, seek a writ of mandamus in the appropriate appellate court. *Compare Cassidy v. Fuller,* 568 S.W.2d 845, 847 (Tex.1978); *and Cur-*

*tis v. Gibbs, supra, with* Tex.Rev.Civ.Stat. Ann. § 1824 (Vernon Supp.1984).

It is ordered that the application for writ of habeas corpus be denied and Relator be remanded to the custody of the sheriff of Lamb County.